### DANIELS *v.* BENEDICT *et al.*

(*Circuit Court, D. Colorado.* May 17, 1892.)

1. JURISDICTION OF CIRCUIT COURTS—PARTITION.
   The circuit courts of the United States, sitting as courts of equity, have jurisdiction of suits for the partition of land.

2. PARTITION—FRAUDULENT DECREE OF DIVORCE—EVIDENCE.
   Plaintiff, decedent's wife, in partition against trustees under his will, alleged that she agreed that a suit for divorce should be begun against her on the sole ground of desertion, and that a decree of divorce should be entered therein, in consideration of a sum of money needed for her temporary support; that such agreement was procured through decedent's paid agents, when plaintiff was greatly enfeebled by disease; and that decedent fraudulently obtained a decree of divorce on the ground of adultery, of which fact plaintiff did not learn until she had removed to the east. Plaintiff alleged that she was utterly ignorant of the pleadings in the suit, and denied the charge of adultery, and that, as soon as informed thereof, she brought suit to vacate the decree. *Held*, that the facts alleged showed a cause of action.

3. SAME—COLLATERAL ATTACK—EXTRINSIC FRAUD.
   In such case the fraudulent matter alleged was extrinsic to the matter tried by the court in the suit for divorce, so that the decree was open to attack in the present collateral proceeding.

4. SAME—COLLUSIVE DECREE—"IN PARI DELICTO."
   Though in such case plaintiff was in fault, to some extent, in consenting to a collusive decree, yet the parties were not *in pari delicto*, and she was not thereby estopped from attacking the decree.

**5. LIMITATIONS—TRUSTS.**
The suit, being to recover property held in trust by defendants, was not affected by the statute of limitations.

**6. SAME—PENDENCY OF SUIT.**
The running of the statute was also prevented by the suit brought in the lifetime of decedent to vacate the decree of divorce, which was pending at his death, about three months before the present suit was brought.

Statement by PARKER, District Judge:

In Equity. The plaintiff in this case, Lilyan B. Daniels, as the wife of William B. Daniels, deceased, brings this suit in equity, by her bill filed, to have a partition of a large estate, alleged to be worth as much as $2,000,000. She alleges she was married to William B. Daniels on July 8, 1882, in the state of Connecticut; that they lived and cohabited together as husband and wife in the city of Denver; that William B. Daniels died in the city of Denver on the 24th of December, 1890, seised and possessed of the large amount of personal and real property described in the bill. Plaintiff further alleges that on March 2, 1891, the defendants, Mitchell Benedict, William G. Fisher, and Lewis C. Ellsworth, caused to be presented for probate the will of the said husband of plaintiff; that defendants conspired to prevent plaintiff from receiving anything from the estate of said husband. Plaintiff asks a partition of said estate. Plaintiff further alleges in her bill that—

Some time before the 1st day of March, 1886, the said William B. Daniels had arbitrarily and wrongfully refused longer to live or cohabit with the plaintiff, and had expelled and excluded her from his and her residence and home in the city of Denver, and had from such time thereafter refused and neglected to maintain or support her, or to furnish any means whatever for her maintenance or support, so that being, through the power and influence of her said husband, deprived of friends in the city of Denver, and being without money, she was compelled to leave said city of Denver, and to find a home and friends and assistance elsewhere; that thereupon she removed temporarily to the city of Cheyenne, in the then territory, but now state, of Wyoming; that, while residing at said city of Cheyenne, she became severely and dangerously ill, among strangers, and without money; that her mind, as well as her body, had become greatly impaired, and at times she was wholly bereft of reason and consciousness, and at all times during her said illness, when not wholly unconscious and mentally irresponsible, she was only partially able to think or act, and was at all of said times unable to act intelligently or advisedly; that, while so ill and in such condition, she was approached and surrounded by the agents, employes, and emissaries of the said William B. Daniels, and a settlement of her domestic troubles and difficulties with the said Daniels was proposed by the agents, emissaries, and confederates procured and paid by the said Daniels; that, while in the condition before mentioned, it was represented to and urged upon her that her said husband, the said William B. Daniels, would never live or cohabit with her again; that he would not support her, or furnish means for her support; that he had become thoroughly estranged; that he would use his great wealth and his influence in the city of Denver to cause her to be ostracized and practically driven and banished from the said city of Denver, and that she would be unable to assert or recover her marital rights except by long, tedious, and expensive litigation; that pending such litigation she would have no means of support; and that, for all of said reasons, it would be better and wiser for her to accept terms from her said husband, and that he was anxious to procure a divorce.

The plaintiff further states that the person who made such representations and arguments pretended to be a friend to her, and pretended to be greatly shocked and indignant at the conduct of the said William B. Daniels; that she fully confided in said person, and believed that he truly was what he pretended to be, and, so believing, put full faith and confidence in him; and that she thereupon authorized and caused said person to open negotiations with her said husband, or his attorneys, for the purpose of effecting some kind of a settlement or adjustment between them.

The plaintiff further states that on or about the 1st day of March, 1886, while she was still ill in body and in mind, and unable to attend to business, and while in great distress, mental as well as physical, as before stated, the said person reported to the plaintiff that the said William B. Daniels desired to be freed from the bond of matrimony then existing between him and the plaintiff, and the said person, for the purpose of procuring the consent of the plaintiff, represented to her that a suit might be commenced in one of the courts of the state of Colorado by the said William B. Daniels, as plaintiff, against her as defendant, on the ground that she (the plaintiff) had abandoned and deserted the said William B. Daniels, and that if such charge were not denied, and said suit were not defended, he, the said William B. Daniels, could and would procure a divorce upon the said ground of desertion and abandonment; and that for the purpose of procuring the assent of the plaintiff to said arrangement the said Daniels offered to pay to her a sum of money sufficient to meet her then pressing wants and necessities, and to make her for a time free from financial embarrassment, but which sum so offered was wholly out of proportion to the ability of the said Daniels to pay, and wholly insufficient to enable the plaintiff to keep and maintain herself in the station of life to which she had been accustomed, or commensurate with her position and standing as the wife of the said William B. Daniels. The plaintiff, being, as before stated, in great distress, bodily and mentally, being thereto advised and urged by said person, whom she still implicitly trusted, and being then dependent upon strangers, consented and agreed that a suit might be commenced against her in one of the courts of the state of Colorado for the purpose of enabling the said William B. Daniels to procure a decree of divorce upon the ground of desertion and abandonment, as before stated, but upon no other ground whatever. That pursuant to said arrangement the plaintiff, then being at Cheyenne, still sick and ill, and unable to move or travel of her own accord or without help, was brought or carried into this state at the instance and by the procurement of the said William B. Daniels, and under the control of his agents and emissaries, and while in said state a paper purporting to be a writ of summons in said suit of William B. Daniels against her was served or pretended to have been served upon her, and she, at the instance of the agents, emissaries, and confederates of the said William B. Daniels, was induced to and did accept service of said writ or paper, being informed at the time, and still believing, that the complaint in said suit, and the ground therein stated for the divorce to be obtained, was abandonment and desertion only; that at said time she was still sick and ill, mentally and bodily; that she was then at a house surrounded by persons and servants provided by the said William B. Daniels, and had but little if any control over herself, and during all of said time was wholly and completely under the dominion, influence, control, and supervision of the said William B. Daniels, his agents, servants, emissaries, and confederates, and in all things was made to do, and did do, as said Daniels, or his agents or confederates did or desired, until said decree of divorce was procured; that afterwards, on or about the 16th day of March, 1886, she was informed that the decree of divorce had been rendered in said cause upon the ground before mentioned, but she was not then informed, nor did she in any manner

have reason to fear or suspect, that the said divorce had been procured upon any other ground or statement than that of desertion and abandonment, as aforesaid; that thereafter she soon departed from the state of Colorado, and commenced to reside at the city of Chicago, in the state of Illinois, and continued there to reside until she removed to the city of New York, in the state of New York, where she now resides.

The plaintiff further represents that for a long time after the said 16th day of March, 1886, and after her removal to said city of Chicago, she remained seriously and dangerously ill, and did not recover her health until during the summer of 1887; that during all of said time her mind was so enfeebled by her continued illness and physical weakness that she was wholly unable to give any attention or consideration to her affairs, and by this time, owing to the expense caused by her illness, she was again without money; that about this time, and not before, she learned that the decree of divorce in said suit had been procured upon the ground that she (the plaintiff) had been guilty of adultery with a certain person named in the complaint in that suit, and that the charge of abandonment and desertion had not been made in said suit; that soon thereafter she learned and discovered that she had been deceived, duped, misled, and inveigled by the agents, emissaries, and confederates of the said William B. Daniels into giving her consent to the decree of divorce upon the ground stated and alleged in the complaint therein, and in the decree of divorce, and she then learned that the said person who came to her before said 1st day of March, 1886, and who professed to be her friend, and who also professed to be so greatly shocked and indignant at the conduct of the said William B. Daniels towards your plaintiff, was a spy and detective who had been procured, employed, and paid by the said Daniels for the purpose of deceiving, duping, and leading the plaintiff into the scheme and plan devised and concocted by the said Daniels, his agents, attorneys, employes, and confederates, and which was carried out as aforesaid.

The plaintiff further states that she never saw the complaint in said suit, nor was the same ever read to her, nor the contents thereof in any manner stated to her. She further avers that she did not read the paper stated to be a summons, nor was the same read to her, nor was she then able, physically or mentally, to read and understand the same, and that she signed the acceptance of service thereon at the request and instigation of one of the agents and confederates of the said William B. Daniels, on his representation that it was a mere formal matter, and at said time she had full faith and confidence in the integrity and good faith of the person at whose solicitation she signed the same, and then believed that the said suit, then commenced for the purpose of divorce, charged her with desertion and abandonment only, and she did not know, nor did she have in the slightest manner any suspicion, that any fraud, trick, or deception was intended to be practiced upon her.

And the plaintiff expressly charges that the said statements in said complaint made, accusing her of adultery with the person therein named, were and are absolutely and wholly false; and she expressly charges that the evidence given at the pretended trial or hearing of said cause, at which she was not present, and which occurred without her knowledge, was false and fraudulent; and she avers and charges that the persons who testified were suborned by the said William B. Daniels, or some of his agents or confederates, and by money paid to them by the said William B. Daniels, or paid to them by some of his agents or confederates, were induced to give and did give false, foul, and perjured testimony against the plaintiff in said suit, and that by virtue of said false, foul, and perjured testimony only was the said decree of divorce in said suit procured.

And the plaintiff further states and charges that, when she first heard that the divorce had been procured in said suit upon the ground of adultery, she

began to make diligent inquiries, and continued making them until she learned all the facts which could then be ascertained, and that, as soon as she became convinced that the fraud and deception hereinbefore mentioned had been practiced upon her, she caused to be commenced a suit in the county court of said county of Arapahoe, in which said divorce had been obtained, to set aside, annul, and cancel said decree, on the ground of fraud, and which said suit was still pending and undetermined on the 24th day of December, 1890, when the said William B. Daniels departed this life as aforesaid.

The plaintiff further charges that the said decree of divorce was and is otherwise void, invalid, and of no effect, for the reason that the said county court of the county of Arapahoe, under the constitution and laws of the state of Colorado, did not have and could not have jurisdiction of any suit for divorce; and she avers and charges that said decree of divorce in said pretended cause was and is utterly null and void for want of jurisdiction by said court over the subject-matter therein, or of the person of the defendant.

To the bill, William C. Daniels files a demurrer, and for cause thereof says—

That the said complainant hath not, by her said bill, made such a case as entitles her, in a court of equity, to any relief from or against this defendant, touching the matters contained in the said bill, or of any such matters; and that it appears by the said complainant's own showing, by her said bill of complaint, that the said complainant is not entitled to the relief prayed by her said bill against this defendant.

Sarah M. Kenyon and William D. Kenyon, two of the legatees under the will, file a demurrer, and for cause thereof say—

That said bill does not contain such statement of facts, nor does it contain any matter of equity, entitling the plaintiff to any relief against these defendants. And the said bill shows upon its face that this court has no jurisdiction of the subject-matter of the cause of action therein set forth.

The other defendants in the case file demurrers of the same character, setting out as cause—

That the said complainant hath not, in and by her said bill, made or stated such a case as doth or ought to entitle her to any relief, as thereby sought and prayed for, from or against any one of the said defendants.

Demurrers overruled.

*W. S. Decker* and *T. J. O'Donnell*, (*Hugh Butler* and *Hatch & Warren*, of counsel,) for complainant.

*Mitchell Benedict* and *Alford C. Phelps*, for Ellsworth, Parnell, Croke & Fisher.

*Mitchell Benedict*, *pro se.*

*Geo. J. Boal*, for Hart.

*Thos. M. Patterson*, *Wm. P. Hillhouse*, *Chas. Hartzell*, and *J. McD. Patterson*, for Daniels.

PARKER, District Judge, (*after stating the facts as above.*)  This is a suit in equity for partition.  The plaintiff claims that she, as the wife of William B. Daniels, deceased, under the laws of Colorado, is entitled by inheritance to one half the property of which he died seised; that there was but one child to inherit from the said Daniels,—his son, William C. Daniels.  There can be no doubt that courts of equity have concur-

rent jurisdiction with courts of law of suits for partition.     Pom. Eq. Jur. §§ 140, 174, 1387; Story, Eq. Jur. §§ 646, 658.     In the last of these sections the law is thus stated by that learned jurist:

"The courts [meaning courts of equity] have assumed a general concurrent jurisdiction with courts of law in all cases of partition.    So that it is not now deemed necessary to state in the bill any particular ground of equitable interference."

Mr. Justice BREWER, in *Smelting Co.* v. *Rucker*, 28 Fed. Rep. 220, fully recognized and declared the rule upon this subject.     There can be no doubt about this court, as a circuit court of the United States, sitting as a court of equity, having jurisdiction of this suit in partition.

But it is claimed that plaintiff is not entitled to any interest in the estate of William B. Daniels, because at the time of his death she was not his wife, because upon or about March 16, 1886, she was divorced *a vinculo matrimonii* from the said Daniels by a decree of the county court of Arapahoe county, Colo.     The fact that she was so divorced is fully set out in the bill, but it is further averred that said divorce was obtained by deceit, misrepresentations, duress, chicanery, and fraud, and that, therefore, this court should disregard the same.     If the facts are proven as alleged, certainly a case of fraud will be shown.     But can this court disregard the decree of divorce of the county court of Arapahoe county, if the same is shown to have been obtained by fraud?     If it cannot, such decree is a barrier against any decree of partition by this court, because plaintiff has no interest in the property to be partitioned.     It is well established that a court will not set aside a judgment, or disregard the same, because it was founded on a fraudulent instrument or perjured testimony, or on any matter intrinsic to the matter tried by the first court, or on a fraud in the matter on which the decree was rendered.     But it is equally well settled that a court of equity will, on account of fraud growing out of matter extrinsic or collateral to the matter tried by the first court, set aside or annul a judgment or decree between the same parties.     Mr. Justice MILLER, in *U. S.* v. *Throckmorton*, 98 U. S. 61, said:

"But there is an admitted exception to this general rule in cases where, by reason of something done by the successful party to a suit, there was in fact no illusory trial or deception of the issue in the case.    When the unsuccessful party has been prevented from exhibiting fully his case, by fraud or deception, or deception practiced on him by his opponent, as by keeping him away from court by a false promise of a compromise; or where the defendant never had knowledge of the suit, being kept in ignorance by the acts of the plaintiff; or where an attorney fraudulently or without authority assumes to represent a party, and connives at his defeat; or where the attorney, regularly employed, corruptly sells out his client's interest to the other side,—these and similar cases which show that there has never been a real contest in the trial or hearing of the case are the reasons for which a new suit may be sustained to set aside and annul the former judgment or decree, and open the case for a new and a fair hearing."

The court, speaking in reference to authorities referred to in the above-named opinion, says:

"In all these cases, and many others which have been examined, relief has been granted on the ground that, by some fraud practiced directly upon the party seeking relief against the judgment or decree, that party has been prevented from presenting all of his case to the court."

A fraud practiced in the procurement of a judgment will furnish grounds for attacking it in a collateral proceeding. *Mayor, etc.*, v. *Brady*, 115 N. Y. 599, 22 N. E. Rep. 237; *Murphy* v. *De France*, 101 Mo. 151, 13 S. W. Rep. 756; *Hass* v. *Billings*, 42 Minn. 63, 43 N. W. Rep. 797; *Stunz* v. *Stunz*, 131 Ill. 309, 23 N. E. Rep. 410. The same rule applies, in regard to attacking it for fraud, to a decree of divorce, as the one applicable to any other judgment or decree. 2 Freem. Judgm. p. 860, § 489, says:

"Decrees of divorce may, when obtained by fraud, be vacated in the same manner and under the same circumstances which would warrant the vacation of any other decree, although the party who obtained the fraudulent judgment has contracted another marriage."

Mr. Black, (1 Judgm. § 320,) says:

"Aside from legislation, the courts will generally hear motions to vacate divorce judgments on the same grounds and conditions as any other judgments, except, perhaps, that they proceed with greater caution, and with more anxious care of the intervening rights of strangers."

The above rule is sustained by *Adams* v. *Adams*, 51 N. H. 388; *Edson* v. *Edson*, 108 Mass. 590; 2 Kent, Comm. 655; Story, Confl. Laws, 597. In *Fermor's Case*, 3 Coke, 77, 78, it is declared that—

"The law so abhors fraud and covin that all acts, as well judicial as others, and which of themselves are just, yet being mixed with fraud and deceit, are in judgment of law wrongful and unlawful."

Without multiplying authorities, which may be done, I take it that the true rule is that a decree of divorce stands on the same footing as every other judgment or decree, and, if obtained by fraud growing out of matter extrinsic or collateral to the matter tried by the court rendering the decree, it will be set aside or disregarded.

The next question which presents itself is, does this court have jurisdiction in this case? We have seen that there is no doubt about its having jurisdiction to make partition. If so, can it, in the exercise of this jurisdiction, so far listen to an attack on the decree of the county court of Arapahoe county as to disregard it as fraudulent, if such fraud is proven? The law seems to be well settled by numerous decisions of the supreme court of the United States that it can. The last utterance by the supreme court on the subject is found in *Marshall* v. *Holmes*, 141 U. S. 589, 12 Sup. Ct. Rep. 62. The effect of the decision in the above case is that the federal court cannot require the state court to set aside or vacate the judgment, but it may, as between the parties before it, if the facts justify such relief, adjudge that the party practicing the fraud shall not enjoy the inequitable advantage obtained by his fraudulent decree. The principle announced is:

"A circuit court of the United States, in the exercise of its equity powers, and where diverse citizenship gives jurisdiction over the parties, may deprive

a party of the benefit of a judgment fraudulently obtained by him in a state court, if the circumstances are such as would authorize relief by a federal court if the judgment had been rendered by it, and not by a state court, as a decree to that effect does not operate on the state court, but on the parties."

The above doctrine is fully sustained by *Arrowsmith* v. *Gleason*, 129 U. S. 86, 9 Sup. Ct. Rep. 237. The whole subject was fully considered in *Johnson* v. *Waters*, 111 U. S. 640, 667, 4 Sup. Ct. Rep. 619. The court in that case said:

"The most solemn transactions and judgments may, at the instance of the parties, be set aside or rendered inoperative for fraud. The fact of being a party does not estop a person from obtaining, in a court of equity, relief against fraud. It is generally parties that are the victims of fraud. The court of chancery is always open to hear complaints against it, whether committed *in pais*, or in or by means of judicial proceedings. In such cases the court does not act as a court of review, nor does it inquire into any inequalities or errors of proceeding in another court; but it will scrutinize the conduct of the parties, and, if it finds that they have been guilty of fraud in obtaining a judgment or decree, it will deprive them of the benefit of it, and of any inequitable advantage which they have derived under it."

The same rule is declared in *Gaines* v. *Fuentes*, 92 U. S. 10, and in *Barrow* v. *Hunton*, 99 U. S. 80.

There is no doubt in my mind that the tribunal and the form of action have been properly selected. There is no doubt but the bill of complaint in this case sets up sufficient facts to show a case of procuring a decree by fraud; and therefore it sets out sufficient facts to constitute a cause of action, and to authorize the relief prayed.

Some fault may be attributed to the plaintiff, growing out of her conduct in the divorce proceedings in the county court of Arapahoe county. But certainly, from the facts alleged in the bill, the parties were not *in pari delicto;* that is, they were not equally blameworthy. In such case a court of equity will, in furtherance of justice and a sound public policy, aid the one who is comparatively the more innocent. 1 Pom. Eq. Jur. § 403; 2 Pom. Eq. Jur. § 941. It cannot be asserted that plaintiff is estopped by her conduct from proceeding in this form of action, although the effect may be to disregard or treat as a nullity the decree of divorce granted by the county court of Arapahoe county; for she was not in a condition to assert her rights in that court, and she must have been in that condition before she can be estopped from attacking the decree rendered against her.

The statute of limitations was alluded to in the argument of the demurrers as being a bar to the plaintiff's recovery, although this is not set out as a cause of demurrer. This is a suit to recover property by plaintiff that is held in trust for her by defendants. If she has any property rights in this large estate, then the holding of the property which belongs to her creates an express trust in her favor. To such a trust relation the statute of limitation has no application. *Lewis* v. *Hawkins*, 23 Wall. 119. The principal aim of this suit is to obtain partition of property, and an incident thereto is to disregard or treat as a nullity the decree of divorce. Besides, by the allegations of the bill the plain-

tiff, as soon as she discovered the fraud which had been practiced upon her, brought a suit in the county court of Arapahoe county to set aside and annul the decree of divorce on the ground of fraud. This suit was pending on the 24th of December, 1890, when William B. Daniels died. Then, on April 2, 1891, she brought this suit in this court. The point is presented in the brief of counsel for plaintiff in support of the allegation in the bill, that the county court of Arapahoe county, under the constitution and laws of Colorado, did not have, and could not have, jurisdiction of any suit for divorce. It is not necessary, in passing on the several demurrers to the bill, to pass on the question involved in this proposition. It is a question of such delicacy, and one which may be so far-reaching in its effects, that I prefer that it should be settled, if to be settled at all, by my Brother HALLET, who is more familiar with the constitution and laws of Colorado than I am, and, because of his large experience on the supreme bench of the state and on the federal bench, is much better qualified than I am to pass on this question.

The demurrers of William C. Daniels, Sarah M. Kenyon, and William D. Kenyon, Lewis C. Ellsworth, Laura Parnell, Henry Martyn Hart, and Thomas B. Croke, Mitchell Benedict, and William G. Fisher, are overruled.