HASTINGS et al. v. DOUGLASS.

(District Court, N. D. West Virginia. March 15, 1918.)

1. MARRIAGE ☞3—WHAT LAW GOVERNS.

The lex loci governs with respect to the matrimonial capacity of the parties, as well as with respect to the manner or form of solemnization or annulment of marriages.

2. COURTS ☞260—FEDERAL COURTS—JURISDICTION.

Federal courts have no jurisdiction over the subjects of divorce and alimony.

3. COURTS ☞260—FEDERAL COURT—JURISDICTION.

The federal courts have no probate jurisdiction and cannot undertake the administration of estates of decedents; that matter being vested in the state courts.

4. MARRIAGE ☞60(1)—ANNULMENT—RIGHTS OF HEIRS.

Code Va. 1860, c. 109, § 1, in force at the time of the formation of West Virginia, declared that all marriages between a white person and a negro, and all marriages prohibited by law on account of either of the parties having a former wife or husband living, should be absolutely void without any decree of divorce, and that all other marriages prohibited on account of consanguinity or affinity, etc., should be void·from the time they should be so declared by a decree of divorce or nullity. Code W. Va. 1868, c. 64, § 1, which has been continued in force, declares that all marriages prohibited by law or solemnized when either party was incapable, etc., shall be void from the time they shall be so declared by decree of divorce or nullity. Code W. Va. 1913, c. 64, § 4 (sec. 3639), declares that when a marriage is supposed to be void, or any doubt exists as to its validity, either party may institute suit for affirming or annulling the same, and the court shall render a decree affirming or annulling the marriage. *Held* that, after the death of a husband, his heirs at law could not, under the West Virginia laws, assail the marriage 'contract, so as to deprive the widow of her legal interest in his estate, on the ground that the husband was mentally incapable at the time he contracted the marriage.

5. COURTS ☞307(1)—FEDERAL COURTS—WEST VIRGINIA.

Under Acts W. Va. 1915, c. 73, requiring plaintiff, assailing a marriage, to be a bona fide resident of the state, the federal District Court for West Virginia is without jurisdiction of a suit by the nonresident heirs of a West Virginia decedent, assailing his marriage with a resident of that state, for if they be treated as nonresidents, they do not fall within the terms of the statute, and if the heirs were treated as representatives of the decedent, so that his citizenship would control, there would be no diversity of citizenship.

6. COURTS ☞262(3)—FEDERAL COURTS—JURISDICTION.

Where diversity of citizenship exists, the federal courts have jurisdiction to entertain suits for partition of the real estate of a decedent.

7. COURTS ☞307(1)—FEDERAL COURTS—JURISDICTION.

Where nonresident heirs of a West Virginia decedent, all of whom were residents of the same state, sued in the federal District Court for West Virginia· to annul his marriage with defendant, a resident of the state, and for partition of his real estate, the District Court cannot entertain jurisdiction of the proceedings, unless such heirs disclaim any right to assail the marriage, and acknowledge defendant's interest in the estate of the decedent, for, if her marital rights were destroyed, there would be no diversity of citizenship.

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

In Equity. Bill by Stephen B. Hastings and others against Daisy Grace Douglass. On motion to dismiss. Bill ordered dismissed, unless complainants file a disclaimer as to all right to assail defendant's marriage and acknowledge her interest in estate of her deceased husband.

H. H. Emmert, of Martinsburg, W. Va., and Nelson C. Hubbard, of Wheeling, W. Va., for plaintiffs.

Stuart W. Walker, of Martinsburg, W. Va., for defendant.

DAYTON, District Judge. S. P. Douglass died intestate in Berkeley county, this state, without issue. Shortly before his death he intermarried with the defendant, who survived him and has qualified as administratrix of his estate. He died seised of real and personal property estimated to be worth more than $40,000. The plaintiffs, his collateral heirs at law, all residents of the state of Pennsylvania, have instituted this suit in equity for two purposes: First, to have the marriage between decedent and the defendant, Daisy Grace Douglass, declared void because of mental incapacity on the part of decedent at the time of its consummation; and, second, to have the personal estate taken charge of by a receiver appointed by this court and the real estate partitioned among them, barring the defendant of any interest in either by reason of the invalidity of the marriage contract.

Upon this motion to dismiss counsel for defendant presents some very interesting questions of jurisdiction. He insists: (a) That the bill on its face shows its primary purpose to be to annul the marriage contract after the death of the husband, and that federal courts have no jurisdiction to entertain it for this purpose, because no diversity of citizenship existed between the husband and wife, and especially because the jurisdictional amount of $3,000 in monetary value cannot be shown to be in controversy. (b) That under the statutory law of West Virginia marriages solemnized in this state, when either of the parties was insane or physically incapacitated, are not void, but voidable—void only from and after the entry of a decree of a state circuit court, in a suit in equity, wherein it is shown that the parties, or one of them, have resided in the state for a year next preceding the institution of the suit, and that the county where it is brought is the one wherein the parties last cohabited, or (at the option of the plaintiff) the county in which the defendant resides, if a resident of the state, but, if not, the county in which the plaintiff resides, and that now, by reason of the amendatory act of the Legislature, passed in 1915, "in no case shall a suit for divorce be maintainable unless the plaintiff be an actual bona fide citizen of this state." He insists thereupon that (1) marriages are not, in this state, assailable at all after the death of a party thereto, or if so, (2) that these plaintiffs are debarred from assailing this marriage, because they are not and never have been residents of the state.

Again it is argued by counsel for defendant (c) that, if it be held that this suit can be maintained on the ground that it is a suit for partition of real estate, it, for this purpose, could only be so maintained after the court had first decided, adverse to the prayer of the

plaintiffs, that the marriage was valid, and that the widow was entitled as such to an interest in the estate; for, unless she be held to have such interest, the parties plaintiff would be the only ones having interest, and no diversity of citizenship, giving a federal court jurisdiction, would arise, it being shown by the allegations of the bill that all of these plaintiffs are citizens of the same state, Pennsylvania.

On the other hand, counsel for plaintiffs insist that jurisdiction in this court is secured by reason of the bill seeking partition of an estate in which the dower interest of the defendant assailed is largely in excess of the jurisdictional requirement, and diversity of citizenship, as between her and the plaintiffs, is admitted to exist; that the local law of the state regulating marriage and divorce is inapplicable, because, as affecting their property rights, the marriage contract, like any other contract, can be assailed and set aside by any court of competent jurisdiction at their instance.

[1, 2] To determine the right as to these conflicting contentions, so ably presented and argued by counsel, has been somewhat difficult, in view of the fact that a careful search of the precedents in West Virginia and Virginia (where the statutory provisions relating to the substantive law of marriage and divorce are practically the same) presents no case in point. This case, therefore, so far as such legislation is concerned, may be considered as one of first impression, and subject to original construction. The weight of authority establishes the rule that the lex loci governs with respect to the matrimonial capacity of the parties, as well as with respect to the manner or form of solemnization. See note to Hills v. State, 57 L. R. A. 155. The fact that no case is reported in either of the two states involving the questions here presented is significant, and to a certain extent indicates a general acquiescence in the construction I am herein led to place upon statutory provisions of this state.

Turning to the federal authorities, we find that the Supreme Court in Barber v. Barber, 21 How. 582, 16 L. Ed. 226, expressly "disclaim altogether any jurisdiction in the courts of the United States upon the subject of divorce, or for the allowance of alimony, either as an original proceeding in chancery, or as an incident to a divorce a vinculo, or to one from bed and board." This disclaimer is approved in Simms v. Simms, 175 U. S. 162, 20 Sup. Ct. 58, 44 L. Ed. 115, but held not applicable to the jurisdiction of the territorial courts. The ruling in Re Burrus, 136 U. S. 586, 10 Sup. Ct. 850, 34 L. Ed. 500, is substantially to the effect that the whole subject of the domestic relations of husband and wife, parent and child, belongs to the laws of the states. In De La Rama v. De La Rama, 201 U. S. 303, 26 Sup. Ct. 485, 50 L. Ed. 765, it is said:

"It has been a long-established rule that the courts of the United States have no jurisdiction upon the subject of divorce, or for the allowance of alimony, either as an original proceeding in chancery, or as an incident of a divorce or separation, both by reason of the fact that the husband and wife cannot usually be citizens of different states, so long as the marriage relation continues (a rule which has been somewhat relaxed in recent cases), and for the further reason that a suit for divorce in itself involves no pecuniary value."

In Haddock v. Haddock, 201 U. S. 562, 26 Sup. Ct. 525, 50 L. Ed. 867, 5 Ann. Cas. 1, it is held:

"Questions concerning alleged fraud in contracting a marriage and laches on the part of one of the parties in bringing an action for divorce are matters solely of state cognizance, and may not even be allowed to indirectly influence this court in determining the federal question which is involved. The states, at the time of the adoption of the Constitution, possessed full power over the subject of marriage and divorce, and the Constitution delegated no authority to the central government in regard thereto, and the destruction of the power of the states over the dissolution of marriage as to their own citizens cannot be brought about by the operation, of the full faith and credit clause of the Constitution of the United States."

The marriage contract is sui generis. It is the very foundation of society. In it, not alone the parties contracting are interested, but the state also. Under the laws of many states, both church and state must have part in its consummation. The consideration for it is the highest known to the law, and it is well settled that a man indebted to the extent of insolvency may enter into an antenuptial contract, conveying his property to the woman in consideration of her marriage to him, and that, under such contract, the wife will hold the property as against common creditors. Unlike most contracts, marriages can be assailed and avoided only upon such grounds as are specifically set forth in statute. These grounds are limited, and vary in different states. In South Carolina they cannot be annulled at all. The wisdom of the Supreme Court's disclaimer of jurisdiction over such contracts for these reasons becomes apparent. The surrender by the states of their powers through ratification of the federal Constitution was a limited one and did not include the right to regulate marriage and divorce. Each state, therefore, has the right to establish and maintain its own laws touching the subject, and every case must therefore be determined by the local law. For this reason, decisions of other states, having other and different regulations, are not generally pertinent. Therefore, although so far as available I have examined the cases from other states cited by counsel, I have been driven to the conclusion that the question of whether this marriage can be avoided after the death of the husband, to the extent of depriving the widow of her property rights, must be determined alone upon the construction to be given the West Virginia statutes.

[3] Before considering these, it seems pertinent to say that the prayer of the bill that a receiver be appointed to take charge of the personal property of the decedent can in no way aid the right of this court to take jurisdiction. It is admitted that the county court of Berkeley county, a court specially empowered by the laws of the state to administer the estates of deceased persons, has appointed the defendant administratrix of this estate; that she has given bond, qualified, and, under the supervision of that court, entered upon the discharge of her duties as such. That federal courts have no probate jurisdiction, and cannot undertake the administration of estates of decedents, has been decisively determined by the Supreme Court in such cases as Yonley v. Lavender, 21 Wall. 276, 22 L. Ed. 536, and Byers v. McAuley, 149 U. S. 608, 13 Sup. Ct. 906, 37 L. Ed. 867.

See, also, American Baptist Home Mission Society v. Stewart (C. C.) 192 Fed. 976, and Sutton v. English, 246 U. S. 199, 38 Sup. Ct. 254, 62 L. Ed. ——, decided by the Supreme Court on March 4, 1918, not yet officially reported.

[4] The statutory laws of West Virginia relating to marriage and divorce are contained in chapters 63 and 64 of the Code (Hogg's 1913), and the amendatory legislative act of 1915 (Acts 1915, c. 73). They substantially provide that no marriage shall be consummated in the state, except upon the license issued by the clerk of the county court, a bonded officer, who is required to ascertain the names, ages, and residence of the parties, and the consent of parent or guardian in case a party be under age. Marriages are required to be solemnized by a minister of the gospel, who is also required to execute bond before being qualified to solemnize them. The Code of Virginia of 1860, in force at the time of the formation of this state (chapter 109, § 1), provided:

"All marriages between a white person and a negro, and all marriages which are prohibited by law on account of either of the parties having a former wife or husband then living, shall be absolutely void, without any decree of divorce, or other legal process. All marriages which are prohibited by law on account of consanguinity or affinity between the parties, all marriages solemnized when either of the parties was insane, or incapable from physical causes of entering into the marriage state, shall, if solemnized within this state, be void from the time they shall be so declared by a decree of divorce or nullity, or from the time of the conviction of the parties under the third section of the one hundred and ninety-sixth chapter."

This provision was revised and amended by our first Code, that of 1868 (chapter 64, § 1), to read as follows:

"All marriages between a white person and a negro; all marriages which are prohibited by law on account of either of the parties having a former wife or husband then living; all marriages which are prohibited by law on account of consanguinity or affinity between the parties; all marriages solemnized when either of the parties was insane, or incapable from physical causes of entering into the marriage state, or under the age of consent, shall, if solemnized within this state, be void from the time they are so declared by a decree of divorce or nullity."

Without change, this provision, so revised, has remained the law of this state to the present day. It will at once be perceived that, under the provision of the Virginia Code, marriages between a white person and a negro and bigamous marriages were declared to be "absolutely void, without any decree of divorce, or other legal process," and the other classes enumerated should be "void from the time they shall be so declared by a decree of divorce or nullity, or from the time of the conviction of the parties under the third section of the one hundred and ninety-sixth chapter."

In our law, by this revision, marriages between whites and negroes, bigamous marriages, and all the other kinds enumerated in the section, are put upon the same basis—are made voidable—void only from the time they shall be so declared by a decree of divorce or nullity, and criminal conviction for the crime of contracting them no longer changes this status. See Stewart v. Vandervort, 34 W. Va. 524, 12

S. E. 736, 12 L. R. A. 50, and Martin v. Martin, 54 W. Va. 302, 46 S. E. 120, 1 Ann. Cas. 612.

To my mind these changes in the law are very significant. If the marriage contract could be only avoided by a divorce decree, then it is clear that no attack could be made upon it after death. But the statute says by a "decree of divorce or nullity." It is entirely conceivable that, without further limitation upon the words "or nullity" thus used in the statute, a marriage might, after death, by a decree, be declared to have been null, but there are further limitations upon these words in the statute. Section 4 of this chapter 64 provides:

"When a marriage is supposed to be void, or any doubt exists as to its validity, for any of the causes mentioned in the first section of this chapter, either party may institute a suit for affirming or annulling the same, and upon hearing the proofs and allegations of the parties, the court shall render a decree affirming or annulling the marriage, according to the right of the case. In every such case, and in every other case where the validity of a marriage is called in question, it shall be presumed that the marriage is valid, unless the contrary be clearly proven."

From this section, under the rule of exclusion, it would seem clear that only one of the parties to the marriage contract, during the time that it exists undissolved by death, can bring the suit to have it declared a nullity.

But it may be said that all this discussion has relation only to the rights and obligations of the marital couple while living; that, when death comes to one, the property rights of the survivor, as against heirs at law, at once changes, and the marriage contract is then to be judged by the general rules governing ordinary contracts.

I cannot think so. The right of a widow to maintain her social and legal position as widow is just as strong as was her right to maintain such position as wife. It would be grossly incongruous to allow heirs at law to assail marriages after death upon such grounds as fraud or misrepresentation in procurement, lack of consideration, or alleged failure on the part of the survivor in the performance of marital obligations to such extent as to constitute a breach of the contract. On the contrary, it seems clear to me that a number of reasons can be advanced to the effect that, if such contracts are allowed to be assailed at all after death, it must be only on such limited grounds as would denounce the contract as absolutely void ab initio.

I conclude, therefore, that under the laws of West Virginia heirs at law cannot, as attempted in this case, assail the marriage contract, after the death of the husband, so as to deprive the widow of her legal interests in his estate; that the right to assail the marriage contract is made by our law purely personal to the contracting parties, and survives to no one after the death of either.

[5] But, if this were not so, so far as this court's jurisdiction is concerned, if the provision of the act of 1915, requiring a plaintiff assailing the marriage to be a bona fide resident of the state, is applied, or if, to avoid this application, it be held that plaintiffs are representative of the decedent and that his citizenship is to control, the jurisdiction of this court is completely defeated. In the first

instance, the plaintiffs, as nonresidents of the state, would be barred by the express terms of the statute; in the second, no diversity of citizenship would exist.

[6, 7] But this bill is brought for a second purpose, to secure a partition of decedent's real estate. The jurisdiction of federal courts of equity to entertain suits for that purpose, where diversity of citizenship exists, seems to be established. Willard v. Willard, 145 U. S. 116, 12 Sup. Ct. 818, 36 L. Ed. 644; Daniels v. Benedict (C. C.) 50 Fed. 347; Aspen Mining & Smelting Co. v. Rucker (C. C.) 28 Fed. 220. The question at once arises: What relief can this court grant the plaintiffs in this regard? It is at once apparent that, if it allowed them to assail the marriage contract, and should, at their instance, decree it a nullity ab initio, then the dower interests of defendant would be nil, the land would belong to plaintiffs, all of whom are residents of the same state, Pennsylvania, and no diversity of citizenship would exist as a basis of jurisdiction, unless it should be under the rule that this court would, having assumed jurisdiction for the first purpose, retain it for the second.

The two remedies sought, however, seem to me to be so distinct in character and scope as to make the application of such rule improper. On the other hand, this court now holding that the marriage contract cannot be assailed and the dower interests of the defendant destroyed, or, if it could, that it, as a federal court, has no jurisdiction to take such action, it seems clear that jurisdiction to partition can only be assumed, in case plaintiffs disclaim all right to assail the marriage, acknowledge defendant's interests, dower and otherwise, in decedent's estate; and if they are not so prepared to do, the bill should be dismissed, as being multifarious, and for lack of jurisdiction. It is for plaintiffs to determine whether they will file such disclaimer within a reasonable time.