MOORE v. FIDELITY TRUST CO. et al.

(Circuit Court, E. D. Pennsylvania. January 31, 1905.)

No. 14.

1. FEDERAL COURTS—ACTION AGAINST EXECUTORS—ACCOUNTING—JURISDICTION.

Where the surviving partner of a firm is one of the executors of the estate of his deceased partner, the settlement of which is pending in the probate court of the state, a bill in equity will not lie in the federal Circuit Court to compel an accounting between such executors involving an accounting by the surviving partner of his deceased partner's interest in the firm, such proceeding being within the jurisdiction of the probate court.

2. SAME—DIVERSE CITIZENSHIP—INCIDENTAL RELIEF.

Complainant, a nonresident distributee of the estate of a deceased partner, the administration of which was pending in the probate court of the state of his decease, filed a bill in the federal Circuit Court to compel the executors of the deceased partner, one of whom was the surviving partner, to account, and prayed judgment directing an account between the two executors other than the surviving partner and such surviving partner, together with an accounting concerning the partnership affairs between such surviving partner and the estate. *Held*, that the accounting concerning the partnership affairs was the principal object of the bill, and, there being no diversity of citizenship between such executors, and no federal question involved, the court was without jurisdiction.

[Ed. Note.—Diverse citizenship as a ground of federal jurisdiction, see notes to Shipp v. Williams, 10 C. C. A. 249; Mason v. Dullagham, 27 C. C. A. 298.]

In Equity.   Motion to dismiss bill.

John M. Gardner and V. Gilpin Robinson, for complainant.
H. Gordon McCouch, for Fidelity Trust Co.

J. B. McPHERSON, District Judge.   Andrew M. Moore, in his lifetime, and Joseph F. Sinnott were partners in the wholesale liquor business under the firm name of Moore & Sinnott.   They were the successors in business of John Gibson's Son & Co., and sold, among other liquors, a whisky that had become well known as "Gibson" whisky.   Moore died in 1898, a resident of Pennsylvania, and the bill avers that Sinnott has carried on the business since that time without accounting fully to the estate of his deceased partner.   He himself is one of the executors, but there are two others who might compel him to account under the provisions of a statute of Pennsylvania passed in 1901 (P. L. 174), which provides:

"That where one of two or more executors, administrators, guardians, assignees or trustees shall be personally or individually indebted or obligated to the estate which he represents, it shall be lawful for the remaining executors, administrators, guardians, assignees, or trustees, or either of them, to institute an action at law, bill in equity, or other appropriate legal or equitable proceeding, on behalf of the said estate, against such executor, administrator, guardian, assignee or trustee, individually, to recover or enforce the said indebtedness or obligation, the same as if such executor, administrator, guardian, assignee or trustee were not connected with the said estate."

The bill is brought by a son and distributee under the will, residing in the state of New York, and avers that the other two executors have failed to require an accounting from Sinnott, although they have often been requested to bring the appropriate action.   The principal subject of dispute seems to be the right of the surviving partner to use certain trade-marks and trade-names for his individual benefit, and the bill seeks to have that question determined, praying the court to direct an accounting between the two other executors and Sinnott as surviving partner concerning the partnership affairs, "and, as incidental thereto, to determine what, if any, assets, property, or rights, including said firm name and the right to do business under said firm name as 'successors to John Gibson's Son & Co.,' good will of said business, trade-marks owned and used by said firm, and other assets belonging to said firm of Moore & Sinnott that have not been, and are now, un-

disposed of, and that remain in common as the property of said firm, and that, in order thereto, a sale thereof and of the business of said firm be directed by a decree of this court, and the proceeds arising therefrom be credited to the account of said firm for application and distribution, according to the respective interests of said estate and the said Sinnott therein, and to the end that on the coming in of the report of such sale an accounting and settlement of the affairs of said firm may be had under the order of this court," etc. It is objected that such an accounting and sale would, in reality, be taking part in the administration of Moore's estate, and that a federal court has no jurisdiction to entertain such a bill, the relief prayed for being in the exclusive power of the orphans' court of Philadelphia county. This position, I think, must be sustained. It is true that ordinarily the orphans' court in Pennsylvania has no power to settle a partnership account (Miller's Appeal, 136 Pa. 349, 20 Atl. 565; Weigley v. Coffman, 144 Pa. 489, 22 Atl. 919, 27 Am. St. Rep. 667); but it does undertake that task where the surviving partner is the executor or administrator of his deceased associate. Brown's Appeal, 89 Pa. 139, where this was done, may perhaps be distinguished because of its peculiar facts; but in Price's Estate, 81 Pa. 263, the inquiry was made without dispute and as a matter of course. The executor had charged himself with the value of the testator's interest in a firm of which these two were members, and exceptions were filed to the accuracy of the amount. The auditor to whom the exceptions were referred—a distinguished member of the Philadelphia bar—reported, inter alia:

"An examination of the correctness of this credit involved an examination and settlement of the partnership books and accounts of Thomas J. Martin & Co., and a further investigation of the business carried on after Mr. Price's death."

His report was confirmed by the orphans' court, and on appeal the Supreme Court also assumed without question that the accounting was necessary:

"The executor was also the surviving partner of the testator. In his account he charged himself with the sum of $2,662.89 as the value of the deceased partner's interest in the firm. The auditor surcharged him with the sum of $2,242.09 as the real value of said interest. The contention upon this question protracted the audit very greatly, and involved a tedious examination of the books and the business of the firm."

In Unruh's Estate, 13 Phila. 337, the point was decided in an opinion delivered by Judge Ashman, who used this language:

"The accountant held the adversary position of surviving partner of the decedent and administrator of his estate. He charged himself in his account with the proceeds of the decedent's interest in the business, and claimed credit for the amount on the ground that the interest had not yet been settled. The books of the late firm were produced at the audit, and the value of the decedent's share in the partnership assets was assessed and fixed by the auditing judge. It was contended that this inquiry was not within the province of the orphans' court. The cases of Price's Estate, 81 Pa. 263, and Brown's Appeal, 36 Legal Int. 236, however, leave no doubt of the jurisdiction of that court where the surviving partner is executor or administrator of his deceased partner, and the reasons are given briefly in Leland v. Newton, 102 Mass. 350."

These reasons are as follows:

"When one of two partners dies the survivor should settle the estate and account to the personal representative of the deceased. But if the survivor himself becomes the personal representative of the deceased he becomes bound, as executor or administrator, to render an account of his proceedings to the judge of probate. That account necessarily involves the settlement of the partnership affairs. There is no need of any other legal process, because all persons interested in the estate have an opportunity to be heard in respect to the settlement. He has no right to have his account allowed without such hearing."

This position seems to me to be sound. The executor is bound to account for everything of value that belongs to the decedent's estate. Among these assets is the interest in the late partnership, and with the value of that interest the executor must charge himself, or he does not account fully for the property that has come into his hands. In order to charge himself, he must appraise the interest, and for this purpose he is better equipped than any one else can be. The charge being made, any interested person may challenge its correctness, and the orphans' court is then obliged to inquire whether the partnership account has been accurately taken. The result may be that the estate is shown to be a debtor to the executor as surviving partner, and in that event he is entitled to a credit in his account as executor. In the contrary event, he is surcharged with the proper amount. So, also, if the executor has been making an unlawful profit out of the partnership property in which the decedent's estate still owns an interest, he has been using the assets of the estate for his private gain, and again makes himself liable to surcharge. The amount of such surcharge can only be determined by inquiring how extensive such use has been, and how much should be paid in compensation therefor. And if, upon the filing of an account in the orphans' court any interested person should believe that the executor had failed to account for assets of the estate which had come into his possession, or that he had negligently failed to collect assets that were within his reach, a complete remedy is afforded by the right to file exceptions seeking to surcharge the accountant with the value of such assets. This of necessity obliges the orphans' court to decide whether these assets actually exist and should be accounted for. In the present case, if two of the three executors have been derelict in duty by failing to sue the third under the provisions of the act of 1901, their dereliction can be inquired into by the same process, namely, filing exceptions with a view to surcharge. And if it becomes necessary to sell the good will of the firm and the right to use its trade-marks, the orphans' court has the power to turn the property of the estate into money, whenever that course becomes necessary for purposes of distribution.

Proceedings such as these seem to me to be part of the administration of the estate, with which a federal tribunal is not permitted to interfere (Byers v. McAuley, 149 U. S. 608, 13 Sup. Ct. 906, 37 L. Ed. 867); and, as the bill is an equivalent for the procedure just referred to, it should not be entertained by the circuit court. Whether the court would have power to act if the bill asked no more than a decree directing the other two executors to sue Sinnott under the Pennsylvania act of 1901 need not be decided, for, as the foregoing extract from the

prayer for relief shows, the Circuit Court is asked not only to inquire whether certain assets of the estate exist, but to make sale of them if found, although such assets are now under the control of the orphans' court, and subject to its decree. The Supreme Court, in Byers v. McAuley, has explicitly decided that this cannot be done by a federal court.

It will be observed, also, that if the Circuit Court required Sinnott to account to the other two executors, as the bill expressly prays—

"Wherefore your orator prays judgment directing an accounting by and between the defendants Fidelity Trust Co. and Walton Pennewill, as executors of the estate of Andrew M. Moore, deceased, and the defendant Joseph F. Sinnott, of and concerning the partnership affairs between said surviving partner and said estate, as and of the time of and from the death of said deceased to the date of said accounting"—

and took charge of the accounting itself, it would be deciding a controversy between persons all of whom are citizens of the same state. Evidently this is not a mere incident of the relief prayed for, but is the principal object of the bill, and in my opinon this consideration is another fatal objection to the jurisdiction. A number of English cases are referred to in the complainant's brief, where a bill such as this has been entertained by the Court of Chancery. I need scarcely point out, however, that the limited jurisdiction of the Circuit Court is the controlling consideration, and that cases dealing with the powers of a court of general jurisdiction, such as the Court of Chancery, must be read here with the necessary qualifications. Whatever chancery powers the Circuit Court may possess, it cannot exercise them to administer the estate of a deceased person, nor to decide an independent controversy between citizens of the same state that does not involve a federal question. As is declared in Byers v. McAuley, the Circuit Court may sometimes determine such controversies, where it has taken property into its custody by virtue of its original jurisdiction, and has thus acquired the ancillary jurisdiction to hear all claims against the fund, by whomsoever made. "Possession of the res draws to the court having possession all controversies concerning the res." In the present case, however, the decedent's estate is being administered by the orphans' court of Philadelphia county, and this court has no power or control over the assets. The controversy outlined in the bill calls for the exercise of original, and not ancillary, jurisdiction, and concerns a subject—the administration of a decedent's estate—with which the Circuit Court has no original power to deal.

For these reasons I am of opinion that the bill should be dismissed.