### AMERICAN BAPTIST HOME MISSION SOCIETY et al. v. STEWART et al.

(Circuit Court, N. D. West Virginia. December 28, 1911.)

1. COURTS (§ 505*)—JURISDICTION—POSSESSION OF RES.

Under the rule that possession of the res draws to the court having possession ancillary jurisdiction of controversies concerning the res, an administrator appointed by a state court being an officer of that court, his possession of decedent's property is a possession taken in obedience to the orders of the court, which cannot be disturbed by any other court.

[Ed. Note.—For other cases, see Courts, Cent. Dig. § 1410; Dec. Dig. § 505.*]

2. COURTS (§§ 260, 263*)—JURISDICTION—FEDERAL COURTS—ADMINISTRATION OF DECEDENT'S ESTATE.

A federal court has no original jurisdiction in respect to the administration of a decedent's estate, and cannot, by entertaining jurisdiction of a suit against the administrator, draw to itself full possession of the estate or the power of determining all claims against it, but where an estate is ready for distribution, and no adjudication has been made as

to the distributees, the federal court may entertain jurisdiction in favor of citizens of other states to determine and award their shares.

[Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 792, 799, 800; Dec. Dig. §§ 260, 263.*]

3. COURTS (§ 505*)—FEDERAL COURTS—JURISDICTION—ADMINISTRATION OF ESTATES—EQUITY—POWERS.

Where a state court in which the administration of a decedent's estate was pending had exclusive probate jurisdiction, but no equity powers and could not settle the accounts of the decedent's surviving partner, who was also the executor, which was necessary to determine the interests of nonresident and residuary legatees, a federal court at the instance of such legatees had jurisdiction in equity on a bill charging the executor with fraud, conversion, devastavit, etc., to settle the executor's accounts as surviving partner and also as an incident thereto to determine the amount, if any there be, due to the complainants as residuary legatees and decree payment thereof.

[Ed. Note.—For other cases, see Courts, Cent. Dig. § 1410; Dec. Dig. § 505.*

Probate jurisdiction of federal courts, see note to Bedford Quarries Co. v. Thomlinson, 36 C. C. A. 276.]

In Equity. Bill by the American Baptist Home Mission Society and others against George M. Stewart, as executor of Eliza Stewart, deceased, and others. Decree for complainants referring the cause to a master to take an account.

In April, 1907, Eliza Stewart died testate in Tyler county, W. Va. By her will she devised her home house and lot in Sistersville to her nephew, George M. Stewart. This house and lot constituted all the real estate of which she died seised. Stewart was also bequeathed all her furniture and household effects. Specific bequests, to the extent of $3,000, were made, after which the residue of estate is bequeathed to the American Baptist Home Mission Society of New York, the American Baptist Missionary Union of Boston, Mass., and the State Mission Board of the Baptist General Association of West Virginia, to be divided equally between them. George M. Stewart was named executor of this will and qualified as such before the county clerk of Tyler county on April 15, 1907. On the 6th day of October, 1910, the American Baptist Home Mission and the American Baptist Foreign Mission Societies filed their bill in this court against George M. Stewart in his own right as surviving partner, and as executor of said Eliza Stewart, deceased, and the legatees named in the will, in which it is charged, among other things, that said complainants are corporations, the first under the laws of New York, the second under the laws of Massachusetts; that the second's corporate name was by law changed from the American Baptist Union to its present one; that the State Mission Board of the Baptist Association of West Virginia is a voluntary association without legal status as such as also is the Long Reach Baptist Church at Sistersville to which a bequest of $100 annually for ten years is made; that no objection is made by complainants to such bequests to such voluntary associations unless excepted to by others interested, in which event they are claimed by complainants to be lapsed legacies due them as residuary legatees.

The bill then changes the personal estate of said decedent, not specifically disposed of, to consist of her interest in the partnership assets of E. Stewart & Co., a firm lately composed of the said Eliza Stewart and her nephew, the said George M. Stewart, formed in 1892 or 1893, and to which said Eliza Stewart, at the time engaged in business, contributed at least $5,000, and to which George M. Stewart, without means, contributed nothing; that the stock, furniture, and fixtures at the time of testatrix's death was worth about $22,700, with liabilities of about $9,000. It is then charged, in substance, that upon Eliza Stewart's death George M. Stewart took possession

of the entire stock of goods, made no inventory of it, received new goods into the store charged to the firm, opened the store immediately and resumed business of selling the goods; still ordered new goods, added them to the stock and sold indiscriminately regardless of whether they were of the old or new stock; on September 30, 1907, pretended to advertise and offer for sale the entire stock, including his own interest, and then and there became the purchaser thereof from himself at $11,100, little, if any, more than half the value thereof; further, that said Stewart has rendered no account or any statement of receipts and disbursements as executor as required by law, denies that the assets of the estate are more than sufficient to pay the specific legacies and generally ignores, and denies complainants' rights in the premises, and that they have exhausted all efforts to secure a settlement of said executor's accounts as such and as surviving partner. The prayer of the bill is substantially that an accounting be required of Stewart's partnership and executorial accounts.

To this bill defendant Stewart has filed a plea to the jurisdiction and an answer. By the plea it is alleged that Stewart was appointed executor by the county court of Tyler county; that upon this court by the Constitution of the state was conferred "jurisdiction in all matters of probate"; that, as executor, Stewart had returned the appraisement of the estate, an account of his sale of the property, and had laid his accounts before an officer of that court for settlement as required by law; that the settlement of his accounts as executor necessarily involved the settlement of his accounts as surviving partner. Wherefore, it is alleged substantially that the county court of Tyler county, a court of competent jurisdiction, has taken full possession of the property and control of the controversies involved, and this court is without jurisdiction in the premises. The answer is substantially a specific denial of the allegations of the bill material to complainants' recovery. Depositions have been taken and the cause comes on to be heard on complainants' motion for a reference to settle Stewart's accounts.

R. G. Linn and Dave D. Johnson, for complainants.

McCoy & Swiger and Pugh & Pugh, for defendant Stewart, executor.

DAYTON, District Judge (after stating the facts as above). [1, 2] The question of jurisdiction presented here has been to me a very perplexing one. At first blush, it would seem to be settled by that line of decisions of which Byers v. McAuley, 149 U. S. 608, 13 Sup. Ct. 906, 37 L. Ed. 867, is the leading one, where the Supreme Court has held that: (a) Where property is in the actual possession of one court of competent jurisdiction, such possession cannot be disturbed by process out of another court. (b) An administrator appointed by a state court is an officer of that court. His possession of decedent's property is a possession taken in obedience to the orders of that court. It is the possession of that court, which cannot be disturbed by any other court. (c) Possession of the res draws to the court having possession all controversies concerning the res by ancillary jurisdiction. (d) A federal court has no original jurisdiction in respect to the administration of a deceased person, and it cannot, by entertaining jurisdiction of a suit against the administrator, draw to itself the full possession of the estate, or the power of determining all claims against it. (e) Where the estate of a deceased is ready for distribution, but no adjudication has been made as to the distributees, the Circuit Court can entertain jurisdiction in favor of citizens of other states to determine and award their shares in the estate. It is to be noted that this case confirms the principle, before time enunciated, in Yonley v.

Lavender, 21 Wall. 276, 22 L. Ed. 536, Hess v. Reynolds, 113 U. S. 73, 5 Sup. Ct. 377, 28 L. Ed. 927, and Payne v. Hook, 7 Wall. 425, 19 L. Ed. 260, that a citizen of another state may establish a debt against the estate in the federal courts, and in like manner a distributee, citizen of another state, may establish his right to a share in the estate, and enforce such adjudication against the administrator personally, or his sureties, or against any other parties subject to liability, or in any other way which does not disturb the possession of the property by the state court. See opinion 149 U. S. at page 620, 13 Sup. Ct. 906, 37 L. Ed. 867. Several very serious and pertinent questions arise at once touching the practical enforcement of this principle.

[3] What limitations, if any, are to be enforced, as against such distributee, in "establishing" his right? The text says none that does not disturb the other court's possession of the property. But how about a case like the one here, where the claimant is a residuary legatee, and, to "establish" his legacy, necessarily requires that the executor's accounts be settled before the amount of such legatee's claim can be ascertained? In such case, under that other principle, enunciated in the text, "that possession of the res draws to the court having possession, all controversies concerning the res by ancillary jurisdiction," is such residuary legatee estopped from "establishing" the amount of his claim until the court having jurisdiction has determined its amount by settlements required of the executor, or has he right to appeal to the court of equity, under its well-settled jurisdiction of accounting, to have the amount of his legacy ascertained and established as against the executor, and regard the necessary settlement of the executor's accounts as a mere incident to his right to have his claim established? If he must await the probate court's action, what is his remedy in case that court shall refuse to require settlement, or so unreasonably delay the same that his residuary legacy is consumed or greatly diminished by accrued interest on specific ones first payable? In this case nearly three years delay is shown without settlement. On the other hand, if such legatee is entitled in this court to at once have his claim established, incidentally by a settlement of the executor's account, what would be the remedy of the executor if this court's ascertainment of the amount due the residuary legatee should not correspond with that subsequently made by the probate court?

But the question here is complicated by still another factor, that of the very limited powers of the "other" court, the county court, to grant plenary relief. The county courts of West Virginia were formerly courts of general jurisdiction, but, under the present Constitution (article 8, § 24 [1]) their jurisdiction is now limited to matters of probate, the appointment of guardians, and the settlement of their accounts, to all matters relating to apprentices, to the administration of the internal police and fiscal affairs of their counties, including the establishment of roads, ways, bridges, public landings, ferries, mills, with authority to levy and disburse the county levy, and in all cases of contest, to judge of the election, qualification, and returns of their own members, and of all county and district officers, subject to such

[1] Code 1906, p. lxxiv.

regulations by appeal or otherwise, as may be prescribed by law. Mayer v. Adams, 27 W. Va. 244. It is, however, also true that the Acts 1882, pp. 137, 194, cc. 68, 84, amending chapters 77, 87, Code 1868, taken together with chapter 37, p. 56, of said Acts, re-enacting section 1, c. 85, Code 1868, as amended by chapter 122, p. 375, Acts 1872–73, repealed the legislation of 1872–73, conferring probate powers on the (state) circuit court, and gave to the county courts and the clerks thereof exclusive probate jurisdiction. Stone v. Simmons, 56 W. Va. 88, 48 S. E. 841.

The probate administration of wills by these county courts, as provided for by chapters 77, 85, 86, and 87, Code 1906, so far as here pertinent, may be condensed and stated to be as follows: The county court, or its clerk in vacation, takes proof of and admits the will to probate. If this is done by the clerk, he is required to report his action to the next term of the court for its confirmation. The executor, so soon as the will is admitted to probate, qualifies by taking the oath required and executing bond in such penalty as the court or the clerk acting may require, after which the court, or clerk acting, appoints not less than three nor more than five appraisers in each county wherein may be real estate, goods, or chattels of the deceased. These appraisers, after being sworn, are required to appraise at its real and actual value all tangible personal property and all real estate which decedent's personal representative is authorized by will to receive the rents from, or to lease or sell, which in their respective counties was owned by decedent at the time of his death. They are further required to list all intangible property, including moneys, credits, investments, annuities, insurance policies, shares of stock, judgments, notes, bonds, and evidences of debt. These appraisements must be returned to the clerk of the county court and by him recorded, and they are made prima facie evidence of the value of the estate, and that it came to the hands of the personal representative. The executor is then required to sell, at public auction, personal property sufficient to pay funeral expenses, charges of administration, debts, and legacies, "having regard to the privilege of specific legacies." He is charged with the obligation, within four months after his appointment, of returning to the clerk, for recordation, an inventory of the estate. This inventory may be the appraisements if signed by him. Also, within four months after sales made of property, he is required to return report thereof. Failing to make such returns, he is subject to loss of commissions and to a fine, to be imposed, not by the county court, but by the circuit court of the county. Charged with the duty to administer the whole estate, he cannot, however, either sue for debts due to, or be sued for debts due from, his decedent, in the county court. This court has no jurisdiction in the premises. Resort must be had to the justices', the intermediary, or circuit courts for such purposes. If the personal estate is insufficient to pay debts, decedent's real estate is chargeable therewith, but the county court has no jurisdiction to decree it for sale. For this purpose the executor or administrator has the right, within six months after his qualification, to institute his suit in equity in the state circuit court (or in the

intermediary court where such exists and has equity jurisdiction) for the county. After the lapse of six months, such suit may be brought by any creditor. To this bill the widow, heirs, devisees, and all known creditors must be made parties defendants, and the unvaried practice has been to fully settle in this suit the accounts of the personal representative in regard to the personal estate because it must be exhausted before the real assets can be resorted to. By this procedure a large proportion of decedents' estates have been settled in this state. Independent of this method, the statute provides for the appointment by the county court of not more than four commissioners of account to have general supervision over all fiduciaries, and to make ex parte settlement of their accounts. Such fiduciary is required to lay before one of these commissioners a statement of his receipts within six months after the end of each year after his qualification, but this requirement does not apply where he has given the parties entitled to the money received in such year a statement of the money and has actually settled with them therefor, nor to a case in which, within said period, the fiduciary shall have laid a statement of his receipts before a commissioner who may in a pending suit (in the circuit or intermediary court) have been ordered to settle his account. When such account has been settled in a suit, the clerk of the court wherein such suit is after final decree is required to certify to the clerk of the county court that such settlement has been made, giving the style of the suit and date of the final decree. This certificate the clerk of the county court must enter of record. If no suit is brought and the fiduciary fails to lay his accounts before a commissioner of accounts within the time required, any person interested as creditor, legatee, or otherwise may cause a commissioner to summon such fiduciary to bring forward his account for settlement, and, if he fails to do so within 30 days thereafter, cause him to be, upon report of the commissioner, fined by the circuit court. The settlement of accounts by these commissioners of accounts is largely, if not wholly, ex parte. Such commissioner can take proof of debts, and is required within a year to make out an account of all debts or demands as may appear to him to be sufficiently proved, stating separately those of each class. To this report exceptions may be filed and the county court may consider such exceptions ex parte, and correct, recommit, or confirm such report. If confirmed, distribution under conditions set forth in the statute may be ordered, but the county court has no power to enforce such order. For this purpose, the statute provides that suit in equity in the circuit court must be instituted by some person interested. If any person interested denies the correctness of these reports of the commissioner of accounts, as confirmed by the county courts, his remedy is not by appeal, but by institution of his suit in equity in the circuit court to surcharge and falsify the same.

Thus it will be seen that, while the probate jurisdiction in this state is vested in the county court, that court's power is practically limited to ministerial and administrative functions, while the power to compel settlement, to punish for failure to do so, to sell and apply real assets, to compel distribution and to surcharge and falsify accounts,

is expressly vested in the other state courts having judicial powers. And practically these powers by the statute are vested in the court of equity. Taking into consideration the many decisions of this state relating to these statutory provisions and the well-established practice here, I have no doubt whatever that on its equity side the state circuit court would maintain a bill such as this, charging an executor with default in settlement for three years, with a devastavit and improper conversion of assets, refusal to account and denial of complainants' claim, and would require a full accounting on the part of this executor.

Does the rule "that an enlargement of equitable rights resulting from a state statute may be enforced in a federal court of equity" (Street's Fed. Eq. Prac. § 27, and cases cited) apply here?

But a still further complication arises. All the estate of the testatrix involved here is that which may be derivable from the partnership composed of herself and her nephew, this executor. By law upon her death these partnership effects became vested in Geo. M. Stewart as surviving partner, and not as executor. If another had been appointed by the will and qualified as executor, the principles laid down in Byers v. McAuley could not apply because he could not, as such executor and officer of the probate court, have taken possession of these goods, and thereby secured to such probate court first and exclusive jurisdiction. His only power and duty in the premises would have been to collect from the surviving partner the value in money of his testatrix's interest therein, and in this state, if suit were required for this purpose, he could not institute it in the county court, the court of probate, but would be required to sue in other courts having judicial powers, just as in cases now where he seeks to sue for and collect any other debt due the estate of his decedent. Does the fact that the surviving partner and the executor are one and the same person change the principle involved so far as the question of jurisdiction here is concerned? Counsel for this executor earnestly insist upon an affirmative answer to this question, and cite in support of this contention the case of Moore v. Fidelity Trust Company (C. C.) 134 Fed. 489, affirmed by the Circuit Court of Appeals for the Third Circuit in Moore v. Fidelity Trust Co., 138 Fed. 1, 70 C. C. A. 663, wherein it is held:

"Where the surviving partner of a firm was one of the executors of the estate of his deceased partner, the settlement of which was pending in the probate court of the state, which had full jurisdiction in equity to compel an accounting between the executors and by the surviving partner of his deceased partner's interest in the firm, a bill by a distributee under the will to compel an accounting by such surviving partner and a payment of the amount found due to the executors for distribution was a suit looking to the mere administration of the estate, and was not therefore maintainable in the federal courts."

This ruling deals with and is based upon Pennsylvania statutes and decisions. It expressly sets forth that the orphans' court of that state was one having plenary equitable powers to settle the accounts of the executor as such and as surviving partner in these words:

"By the law of Pennsylvania, its orphans' courts are vested with exclusive jurisdiction of the estates of decedents. [138 Fed. 3, 70 C. C. A. 665.] * * * That court is a court of equity. It has jurisdiction of the assets belonging to the estate of Andrew M. Moore, and all parties in interest, including Sinnott, the surviving partner of the firm of Moore & Sinnott, are before it. The case is within its grasp, and its power is only limited by the necessities of the case, and by its duty to administer equity in accordance with established rules. In such case it needs no other court to finish its work. [138 Fed. 4, 70 C. C. A. 666.]"

Even under such conditions it is to be noted that Judge Acheson, senior member of the court, filed a strong dissenting opinion. 138 Fed. 1008, 70 C. C. A. 663. How can this case apply here, where the probate court is not a court of equity; in fact, has no equitable powers whatever, and has no jurisdiction conferred upon it to settle partnership accounts? Illustrative of how statutory conditions govern such questions as these we may well cite Vincent v. Martin, 79 Ala. 540, where it is held:

"When the surviving partner becomes jointly with another person administrator of the estate of his deceased partner, he cannot make a settlement of the partnership accounts in the probate court in connection with the settlement of the administration; that court having no jurisdiction of partnership matters, nor of the settlement made by the administrator with himself in a dual capacity."

And in this connection the opinion in Ball v. Tompkins (C. C.) 41 Fed. 486, based upon the law of Michigan, will be found interesting and instructive.

Careful consideration of all these questions has led me to these conclusions:

First. That in this state the county courts, as courts of probate, have no equitable jurisdiction, and no power whatever to settle the accounts of a surviving partner. Such power being a well-recognized one in the practice of the English High Court of Chancery, with which the federal equity jurisdiction is commensurate, it is the duty of this court, as such court of equity, to settle such partnership accounts upon the prayer of these nonresident complainants.

Second. That, inasmuch as under the allegations of this bill charging substantially fraud, conversion, devastavit, and neglect to settle on the part of this executor, the state courts of equity, because of entire lack of power and equity jurisdiction in the county court as the court of probate, would entertain this bill for the purpose of compelling settlement and disbursement, this federal court of equity will do so also at least to the extent necessary to establish the amount, if there be any, due to these complainants as residuary legatees and to decree payment thereof

The plea to the jurisdiction will be overruled, and a reference to a master will be made to (a) settle the accounts of Stewart as surviving partner and ascertain the true amount due from him as such to the estate of Eliza Stewart, deceased; and (b) to ascertain the true amount due to complainants as residuary legatees from said George M. Stewart, as executor of said decedent, after being charged with the amount ascertained to be due from him as surviving partner.